**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

USCOC of New Hampshire RSA #2, Inc.,
a Delaware corporation doing business
as US Cellular

    v.                            Civil No. 05-cv-266-JM

City of Franklin, New Hampshire


**O R D E R**


Plaintiff USCOC of New Hampshire RSA #2, Inc., d/b/a US Cellular ("Plaintiff" or "US Cellular") moves for summary judgment on its claim that the Defendant, City of Franklin, New Hampshire ("Defendant" or the "City"), violated the Telecommunications Act of 1996 (the "TCA") in that the denial of Plaintiff's application for site plan approval to construct a personal wireless service facility was not supported by substantial evidence contained in a written record. Defendant objects. For the reasons set forth below, Plaintiff's motion for summary judgment is granted in part and denied in part.

Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  A genuine issue is one "that properly can be resolved
only by a finder of fact because [it] may reasonably be resolved
in favor of either party."  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 250 (1986).  A material fact is one "that might affect
the outcome of the suit."  Id. at 248.

    In ruling on a motion for summary judgment, the court
construes the evidence in the light most favorable to the
nonmovant.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st
Cir. 2001).  The party moving for summary judgment "bears the
initial responsibility of . . . identifying those portions of
[the record] which it believes demonstrate the absence of a
genuine issue of material fact."  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).  Once the moving party has met its burden,
the burden shifts to the nonmovant to "produce evidence on which
a reasonable finder of fact, under the appropriate proof burden,
could base a verdict for it; if that party cannot produce such
evidence, the motion must be granted."  Ayala-Gerena v. Bristol
Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex,

477 U.S. at 323; <u>Anderson</u>, 477 U.S. at 249).  Neither conclusory

allegations, improbable inferences, nor unsupported speculation

are sufficient to defeat summary judgment.  <u>Carroll v. Xerox</u>

<u>Corp.</u>, 294 F.3d 231, 236–37 (1st Cir. 2002).  The Court sets

forth the material facts supported by record citations below.

Background

I.   <u>Prior Litigation</u>

In a prior action brought in this court, Plaintiff

challenged the denial by the City's Zoning Board of Adjustment

("ZBA") of Plaintiff's application for a height variance for its

proposed facility, which includes a 150–foot tall wireless

telecommunications tower, on a parcel of land located at 798

Central Street (U.S. Route 3) in the City.  <u>USCOC of NH RSA #2,</u>

<u>Inc. v. City of Franklin</u>, Civ. No. 04–66–JM ("<u>Franklin I</u>").  In a

decision dated January 12, 2005, this Court found that the ZBA's

decision was not supported by substantial evidence.  <u>See</u> Opinion

No. 2005 DNH 172.  The Court rejected the City's arguments that

substantial evidence supported the ZBA's conclusions that

locating a wireless telecommunications tower on the parcel at

issue would be injurious to neighboring residential property

values and that the Plaintiff had not shown that no viable co–

3

location sites existed.  Id. at 18, 24.  The Court granted
Plaintiff's motion for summary judgment and ordered the City to
issue approval from its ZBA for Plaintiff to construct a 150-foot
tall tower.  Id. at 24-25.  The height variance issued on March
16, 2005.  See Declaration of Kenneth J. Kozyra[1] In Support of
Pl.'s Mot. for Summ. J. ("Kozyra Decl."), ¶ 6.

II.  Application for Site Plan Approval

Although the Court ordered the City to grant Plaintiff's
request for a height variance in Franklin I, Plaintiff was still
required to submit an application to the City's Planning Board
(the "Board") for site plan approval before it could construct
its proposed facility.  Site Plan Review Regulations, City of
Franklin, New Hampshire, Chapter 402 ("Site Plan Review
Regulations")[2] § 402-3; see also § 402-4 (directing applicants
for site plan approval to obtain any variances required under the
City's zoning ordinance before applying for site plan review).

---

[1]Mr. Kozyra and his firm, KJK Wireless, acted as Plaintiff's
authorized agent and represented Plaintiff in all proceedings
before the City relating to its proposed facility.  Kozyra Decl.,
¶ 2.

[2]Neither party submitted the Site Plan Review Regulations
with its motion papers, but the Court takes judicial notice of
them under Fed. R. Evid. 201.  As of the date of the issuance of
this order, the regulations were available on the Internet at
www.franklinnh.org/cofplandpt.htm.

Plaintiff submitted an application for site plan approval on March 1, 2005.

The site that Plaintiff chose for its proposed facility is on a 2.4-acre parcel of land that currently houses a convenience store, gas station, and a home heating business.  Declaration of Richard Lewis[3] In Support of Df.'s Objection to Pl.'s Mot. for Summary Judgment ("Lewis Decl."), ¶ 3.  Large above-ground fuel storage tanks are located on the site behind the convenience store.  Id., ¶ 7.  The portion of the site on which Plaintiff proposed to construct its facility is zoned for business uses, which includes wireless telecommunication facilities, but it borders a residential district.  Id.

Plaintiff's site plan application included a project summary, a compliance statement and detailed engineering drawings.  See Kozyra Decl., Ex. B.  Plaintiff acknowledged in its application that it did not meet the buffer requirement in the City's zoning ordinance, but Plaintiff requested that the

---

[3]Richard Lewis is employed as the City's Planning and Zoning Administrator.  Lewis Decl., ¶ 2.  His duties include serving as the contact person for all site plan applications, examining applications to determine their accuracy and completeness before submitting the application to the Board for consideration, providing requests to applicants, and providing recommendations to the Board with regard to site plan review issues.  Id.

Board exercise its authority to waive the buffer requirement
citing the existing vegetation on the site and waivers that
Plaintiff claims the Board granted to another wireless service
provider in 2002.

III. Criteria for Site Plan Approval

    A.   Site Plan Review Regulations

    The Site Plan Review Regulations contain a set of criteria
that must be considered by the Board before site plan approval is
granted.  One purpose of the regulations is to "[p]rotect the
public health, safety and welfare."  Site Plan Review
Regulations, § 402-2(A).  During its review, the Board must
determine, among other things, whether "[a]dequate buffers,
landscaping and screening are provided to protect adjoining
properties against any possible detrimental or offensive uses on
the site, including but not limited to unsightly or obnoxious
appearance, smoke and noise."  Id., § 402-7(B).

    The Site Plan Review Regulations generally provide that
nothing in the regulations should be construed to relieve
applicants from complying with any City ordinance that pertains
to the proposed development.  Id., § 402-4.  The Board relied
extensively on provisions of the City's zoning ordinance in

considering whether Plaintiff's application for site plan approval should be granted.  The zoning provisions that the Board found relevant to its review are set forth in the next section.

      B.   <u>Zoning Ordinance</u>

      Sections 305-1(A), (C), (E) and (F) of the Zoning Ordinance of the City of Franklin, New Hampshire, Chapter 305 (the "Ordinance")[4] describe purposes of the Ordinance that the Board found relevant to the consideration of Plaintiff's application. Those purposes are to:

      (A) Encourage the most appropriate use of the land throughout the city;

      (C) Provide safety from fire and other elements;

      (E) Prevent overcrowding of real estate; and

      (F) Promote wholesome home environment.

      Section 305-29.1 of the Ordinance specifically applies to wireless telecommunications facilities.  Provisions of § 305-29.1 that the Board found relevant to Plaintiff's application are:

      (B)(2) reduce adverse impacts that wireless telecommunication facilities may create including impacts on aesthetics;

      (B)(4) permit construction of new towers only where all other reasonable opportunities have been exhausted;

---

     [4]A copy of the Ordinance, with unidentified hand-markings, was submitted as Exhibit A to Kozyra's Declaration.

(E)(6) minimum fall zone requirements for ground
mounted facilities;

(E)(10) camouflage requirements for ground-mounted
facilities;

(E)(21) requiring applicants who propose to build a new
tower to execute an agreement that promotes maximum co-
location upon the new structure;

(F) performance and design standards for proposed
wireless facilities.

The Board also referred to provisions of § 305.29.1(J), which
sets forth factors that the Board must consider when acting on an
application for a "conditional use permit," but there is no
dispute that the Plaintiff was not required to seek a conditional
use permit since Plaintiff proposes to build its facility in a
business district where wireless telecommunication facilities are
a permitted use.  See Ordinance § 305-29.1(B)(10).

IV.  The Board's Consideration of Plaintiff's Application

    A.   The Board's Initial Concerns

    On March 15, 2005, Richard Lewis sent a memorandum to
Kenneth Kozyra setting forth twelve concerns that he had
regarding Plaintiff's application for site plan approval.  Id.,
Ex. C.  Plaintiff's representatives met with Mr. Lewis and the
City's counsel to address these concerns on March 22, 2005.
After that meeting, Mr. Lewis prepared a memorandum to the Board

providing an update on the open and resolved issues.  Id., Ex. D.

The public hearing process on Plaintiff's application began on March 23, 2005.  Id., Ex. S.  Plaintiff's representatives gave a presentation on its proposed facility and took questions from the Board on numerous issues including those raised by Mr. Lewis and others concerns that Board members had.  Several members of the public commented in opposition to the proposal citing the aesthetic harm that tower would have on the residential community.[5]  Residents were also concerned about the proximity of the proposed facility to the above-ground fuel tanks on the site in that a danger would be presented to the community if the tower collapsed at its base causing it to fall on a fuel tank.  Lewis Decl., ¶ 7.  A site walk was scheduled for April 6, 2005, and the hearing was continued to April 27, 2005.

Mr. Kozyra sent a letter to Mr. Lewis dated April 4, 2005 along with revised plans in an attempt to address the concerns raised by the Board.  See Kozyra Decl., Exs. E and F.  Mr. Kozyra described the plan changes to include:

---

[5]Although Mr. Lewis indicates that photographs were presented to the Board illustrating the view of the tower that abutting residents would have, Lewis Decl., ¶ 7, those photographs do not appear to have been made a part of the record.

A three-foot reduction in the height of the facility achieved by grading at ground level;

A change in compound size so that the entire fenced area would be located within the commercial zone;

A change of the location of the antenna array, and a reduction in size so that no part of the antennas extend above the 150-foot limit on the variance;

Relocation of the tower so that US Cellular's and future tenant's antennas do not protrude over the zoning line;

A revised landscaping plan showing the proposed planting of 27 six to seven foot pine trees surrounding the compound; and

Rotation of the equipment shelter so that the 100 watt motion sensitive light faces the front of the parcel away from any residences and the HVAC unit faces toward the densest part of the existing vegetation.

See Kozyra Decl., ¶ 11 and Ex. E.

On April 6, 2005, the Board conducted a site walk of the parcel at issue.  Mr. Kozyra and residents opposed to the proposed facility attended.  Kozyra Decl., ¶ 12.  Plaintiff had staked off the perimeter of the proposed compound and indicated where the tower would be located.  Lewis Decl., ¶ 8.  Board members also walked through the abutting residential community to view the site from the abutter's perspective.  Id.

B.   Most Initial Concerns Deemed Resolved

On April 19, 2005, Mr. Lewis submitted another memorandum to

10

the Board providing his most current comments on Plaintiff's application.  Kozyra Decl., Ex. G.  That memorandum was provided to the Plaintiff by e-mail on April 26, 2005.  Id., Ex. H.  Mr. Lewis indicated in his memorandum that nine of twelve issues that he originally raised with Plaintiff regarding its application had been resolved.  Id., Ex. 6.  He sought additional information from Plaintiff regarding the proposed antenna array, the possibility of installing antennas that are similar to those used by another wireless service provider, and about the generator that would be used at the facility.  Id., Ex. 6-7.  Mr. Lewis stated that he would visit the site again to see whether Plaintiff should be required to provide additional landscaping or fencing to help shield the facility.  Id.

Plaintiff did not believe that any of the open issues identified by Mr. Lewis in his April 19th memorandum and April 26th e-mail were serious enough to prevent Plaintiff from receiving site plan approval.  Kozyra Decl., ¶ 13.  Mr. Kozyra addressed the issues presented in both documents in a letter to Mr. Lewis dated April 26, 2005.  Id., Ex. I.  He stated that Plaintiff was "committed to working with the board to provide additional landscaping or screening within its lease area."  Id.

11

He described the necessary specifications for Plaintiff's antenna required for Plaintiff to meet its coverage and capacity goals for the City.  <u>Id.</u>  He opined that a flagpole or artificial tree design would not be appropriate at that particular site.  <u>Id.</u> And he described the generator's testing and operation procedures.  <u>Id.</u>

    C.  <u>Safety, Noise and Visual Impact Issues</u>

    On April 27, 2005, the hearing on Plaintiff's application continued.  <u>Id.</u>, Ex. T.  Mr. Kozyra provided the Board updated plans and discussed the proposed changes.  He responded to Board members' concerns about the possibility that the tower might fall.  <u>Id.</u>, ¶ 16.  He informed the Board that the tower is designed not to fall even in extreme weather conditions and that, even if a catastrophic failure occurred, the tower was designed to collapse on itself in sections, rather than topple over from its base in a manner that would threaten nearby structures.  <u>Id.</u> Mr. Kozyra resubmitted a report from a professional engineer from Valmont Communications on this point.  <u>Id.</u>, Ex. K.  Mr. Kozyra also informed the Board that Plaintiff would install the quietest generator available, and that it would work with co-locating wireless service providers to install a larger generator so that

12

multiple generators would not be necessary.  Id., ¶¶ 16-17.

The residents who opposed the facility appeared at the hearing with counsel, who presented the residents' concerns about the possibility of tower failure, noise, and the adverse visual impact of the facility.  Id., ¶ 15.  The Meeting Minutes reflect that residents requested that Plaintiff's application be denied under the fall zone and buffer zone provisions of the Ordinance and Site Plan Review Regulations.  Id., Ex. T. at 7-8.

In response to the opposition by residents, Mr. Kozyra informed the Board of his view that the residents' comments about the visual impact of the proposed facility were contradictory and non-specific.  Id., ¶ 16.  In particular, Mr. Kozyra states that the residents:

> at first complained that they could already see the fuel tanks and fuel trucks on the subject parcel but then changed their testimony and, in order to bolster their argument that the top of the tower would create additional visual impact, said they could not see any of the existing commercial uses on the parcel.

Id.  The Board decided to continue the proceedings until May 25, 2005 when the Board would be able to first meet with the City's counsel in closed session to discuss the issues presented during the April 27th session.

D.   <u>The Board's Accommodation Concerns</u>

Mr. Lewis sent Mr. Kozyra a memorandum dated May 2, 2005 expressing concern about the ability of the proposed facility to accommodate at least two additional co-locators.  <u>Id.</u>, Ex. L. Mr. Lewis asked Plaintiff to prepare plans for a facility that would address three different co-location possibilities identifying where the necessary pads for generators and propane tanks would be located.  <u>Id.</u>

Mr. Kozyra responded by letter dated May 3, 2005 stating that Plaintiff's existing plans showed areas for three future tenant locations with measurements.  <u>Id.</u>, Ex. M.  He stated that without specific space configurations any further engineering would be merely speculation.  <u>Id.</u>  Mr. Kozyra also stated that the installations of three other wireless service providers in the City did not include generators.  <u>Id.</u>

On May 10, 2005, Mr. Lewis sent Mr. Kozyra another memorandum indicating that Plaintiff did not seem to understand his concerns.  <u>Id.</u>, Ex. N.  Mr. Lewis clarified that the issue was "whether the footprint pads shown . . . for the equipment shelters also provide enough room for associated equipment, specifically, the generators and propane tanks that would

14

accompany a future tenant."  Id.  Mr. Lewis again stated that in his view engineering plans addressing co-location possibilities were necessary for the Board to ensure that Plaintiff's proposed facility would not undermine the purposes of the zoning ordinance.  Id.

Plaintiff's counsel responded to Mr. Lewis's May 10, 2005 memorandum in a letter dated May 12, 2005.  Id., Ex. O.  Counsel reiterated Plaintiff's position that the plans before the Board showed adequate space for at least three future co-locators. Counsel stated that "if the City has specifications for facilities of potential co-locators and wants us to show exactly how that equipment would be configured within the reduced compound, we would be pleased to go over that with the City," but he objected to Plaintiff being required to undertake speculative drafting exercises.  Id.  Plaintiff did not provide any additional documentation to the Board on the co-location issue.

E. Plaintiff Attempts To Resolve Remaining Concerns

On May 25, 2005, the Board met in a non-public session with counsel, and then opened the meeting to a public session.  Lewis Decl., ¶ 11; Kozyra Decl., Ex. U.  Mr. Kozyra addressed the remaining open issues as he understood them.  Kozyra Decl., ¶ 19.

Plaintiff's counsel and counsel for the residents opposed to
Plaintiff's proposed facility also addressed the Board.  Id.
Although Mr. Kozyra stated during the session that he was unaware
of any cell towers falling in the country, residents' counsel
indicated that he had identified two such incidents –- one in
Florida and one in New York.  Lewis Decl., ¶¶ 11-12.  The Board
closed the hearing, but did not hold deliberations at that time.

On June 8, 2005, the Board met with counsel in a non-public
session to discuss the legal issues presented by Plaintiff's
application.  Lewis Decl., ¶ 13.  On June 9, 2005, Mr. Kozyra
sent a letter to the Board addressing the issues that had been
raised by residents' counsel at the May 25th session.  See Kozyra
Decl., Ex. P.  In his June 9, 2005 letter, Mr. Kozyra noted the
Board's authority to change the size of the buffer zone without a
variance from the ZBA.  Id.  Mr. Kozyra stated that the Board had
waived the buffer zone for two AT&T towers that had been approved
by the Board.  Id.  Mr. Kozyra further stated that Plaintiff had
confirmed that a tower had failed in Oswego, New York, in 2003,
but that the cause of that failure was unclear.  Id.  He disputed
the suggestion, however, that the failure of one or two towers
out of the more than 100,000 towers in the United States could be

16

found to establish a safety concern that justified denying Plaintiff's site plan application.  Id.  In addition, Plaintiff provided the Board two additional reports from professional engineers, one attesting to the safety of telecommunications structures generally and the other specifically addressing the facility proposed for the site at issue.  Id., Exs. Q and R.

V.    The Board's Decision

On June 22, 2005, the Board held a final public session on Plaintiff's application.  A member of the Board presented a copy of a pre–written decision denying Plaintiff's application. Kozyra Decl., ¶ 22.  The Board discussed the merits and issues of Plaintiff's application.  Lewis Decl., ¶ 13.  The Board then voted to deny the application, and issued the written decision that had been presented by motion for the Board members' vote. Kozyra Decl., ¶ 24, see also Lewis Decl., Ex. 6 ("Board's Decision").

Although the Board's Decision purports to rely upon Plaintiff's failure to meet ten different criteria, in the briefing on Plaintiff's motion for summary judgment the City does not dispute the Plaintiff's contention that the Board essentially

relied upon five rationales:[6] (1) the proposed cell tower poses a safety hazard; (2) the proposed cell tower will have an adverse visual impact on the surrounding residential neighborhood; (3) alternative sites exist that could accomplish Plaintiff's goals; (4) Plaintiff did not demonstrate that its proposed facility could accommodate three other personal wireless service providers; and (5) locating Plaintiff's proposed facility on the site chosen constitutes an over-utilization of that property. Plaintiff commenced the instant lawsuit on July 20, 2005 asserting, among other things, that none of the Board's reasons for denying its application were supported by substantial evidence contained in a written record as required by the TCA.[7]

<u>Discussion</u>

I.   <u>The Telecommunications Act of 1996</u>

The provision of the TCA at issue here, 47 U.S.C. § 332(c)(7), "is a deliberate compromise between two competing

[6]<u>See</u> Mem. of Law in Support of the City's Objection to Pl.'s Mot. for Summ. J. as to Compliance with "Substantial Evidence" Provision of Telecommunications Act of 1996 at 4-5.

[7]In their Court-endorsed discovery plan, the parties agreed to resolve motions for summary judgment on Plaintiff's "substantial evidence" claim before conducting discovery on Plaintiff's other claims in this action.   <u>See</u> Document No. 9. Since Plaintiff's other claims are not presently before the Court for decision, the Court does not address them herein.

aims--to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." <u>Town of Amherst v. Omnipoint Commc'ns. Enters., Inc.</u>, 173 F.3d 9, 13 (1st Cir. 1999). The statute "expressly preserves local zoning authority over the placement, construction and modification of personal wireless service facilities." <u>Cellular Tel. Co. v. Zoning Bd. of Adjustment of Borough of Ho-Ho-Kus</u>, 197 F.3d 64, 68 (3d Cir. 1999). <u>See also</u> 47 U.S.C. § 332(c)(7)(A). Nevertheless, the TCA places certain limitations upon the exercise of local zoning authority:

> Local zoning authorities may not discriminate among providers of wireless telephone service, <u>see</u> § 332(c)(7)(B)(i)(I), act in a manner that effectively prohibits the provision of wireless telephone services, <u>see</u> § 332(c)(7)(B)(i)(II), or make zoning decisions based on concerns over the environmental or health effects of the radio emissions associated with wireless telephone service, <u>see</u> § 332(c)(7)(B)(iv) . . . In addition, a zoning board's decision to deny permission to build a wireless service facility must be "in writing and supported by substantial evidence contained in a written record."

<u>Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Township</u>, 181 F.3d 403, 407 (3d Cir. 1999) (quoting 47 U.S.C. § 332(c)(7)(B)(iii)). <u>See also</u> <u>Sw. Bell Mobile Sys., Inc. v. Todd</u>, 244 F.3d 51, 57 (1st Cir. 2001). "Basically, the TCA gives local authorities the first say in determining where and how to

construct [wireless communications facilities]; if, however, a local authority's actions violate the provisions of the TCA, a court has the authority to order the locality to take such steps as are necessary to grant the relief which the wireless provider had originally requested from the locality." <u>Omnipoint Commc'ns. MB Operations, LLC v. Town of Lincoln</u>, 107 F. Supp. 2d 108, 114 (D. Mass. 2000).

II.  <u>US Cellular's Substantial Evidence Claim</u>

Plaintiff seeks summary judgment on the grounds that the Board's decision to deny its application for approval of its site plan violated the TCA, 47 U.S.C. § 332(c)(7)(B)(iii), because it was not supported by substantial evidence contained in a written record.  In considering whether the decision challenged here is supported by substantial evidence, the Court is essentially conducting an administrative review of the City's action based on the written record before the City.[8]  Accordingly, a substantial evidence claim may be resolved on the record without trial.  <u>See Town of Amherst</u>, 173 F.3d at 16 & n.7; <u>USCOC of N.H. RSA #2 v.</u>

---

[8]For this reason, the Court denies the City's request that the Court conduct a view of the site before ruling on Plaintiff's motion for summary judgment.  The view, even if a view is permissible on consideration of a motion for summary judgment, which is questionable, would necessarily require consideration of facts outside of the written record before the City.

<u>Town of Hopkinton</u>, 137 F. Supp. 2d 9, 15 (D.N.H. 2001).

    A.   <u>Substantial Evidence Standard of Review</u>

    "The TCA's substantial evidence test is a procedural safeguard which is centrally directed at whether the local zoning authority's decision is consistent with the applicable local zoning requirements." <u>Town of Lincoln</u>, 107 F. Supp. 2d at 115 (citing <u>Town of Amherst</u>, 173 F.3d at 16); <u>see also</u> <u>Borough of Ho-Ho-Kus</u>, 197 F.3d at 72 (the court's task is to determine "whether the decision, as guided by local law, is supported by substantial evidence").  The test is highly deferential to the local authority, giving the local authority "'benefit of the doubt, since it requires not the degree of evidence which satisfies the <u>court</u> that the requisite fact exists, but merely the degree that <u>could</u> satisfy a reasonable factfinder.'" <u>Penobscot Air Servs. v. FAA</u>, 164 F.3d 713, 718 (1st Cir. 1999) (quoting <u>Allentown Mack Sales & Serv. v. NLRB</u>, 522 U.S. 359, 366-367 (1998)).  The court is not free to substitute its own judgment for that of the local authority, but must determine whether the local authority's decision is based on "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Id.</u> (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 477

21

(1951)); see also Sw. Bell Mobile, 244 F.3d at 58 (substantial
evidence review is highly deferential to the local authority, but
is not a rubber stamp).

In evaluating the Board's decision under the substantial
evidence standard, this Court must consider the evidence in the
record as a whole, taking into account any evidence that is
unfavorable or contradictory to the Board's decision.  See Sw.
Bell Mobile, 244 F.3d at 58; Penobscot Air, 164 F.3d at 718; Pine
Grove Township, 181 F.3d at 408.  The Court will uphold the
Board's decision as long as it is reasonably based upon the
evidence before it and not merely upon unsubstantiated
conclusions.  See Town of Lincoln, 107 F. Supp. 2d at 115.  The
Court may not uphold the Board's decision on grounds that it did
not present in the written decision.  See Nat'l Tower, LLC v.
Plainville Zoning Bd. of Appeals, 297 F.3d 14, 21 (1st Cir.
2002); Nextel Commc'ns. of the Mid-Atlantic, Inc. v. Town of
Wayland, 231 F. Supp. 2d 396, 407 (D. Mass. 2002).

    B.   Application of the Substantial Evidence
         Standard to the Planning Board's Decision

        1.   Safety Hazard

The Court first considers whether the Board's conclusion
that Plaintiff's proposed facility presents a risk to public

health and safety is supported by substantial evidence.  <u>See</u>
Board's Decision at 5-6, III(a), (b), and (d).  There is no
dispute that Plaintiff's proposed facility complied with the
minimum fall zone requirements in the Ordinance.  Still, the
Board was concerned about the alleged threat that was presented
by locating a tower on the chosen site in the event that the
tower should fall over at its base and strike the nearby above-
ground fuel storage tanks located on the site.  Section 402-2(A)
of the Site Plan Review Regulations provide that the Board must
ensure that any proposed development does not threaten public
health and safety.

The only support in the record for the Board's conclusion in
this case appears to be the proximity of the proposed tower to
above-ground storage tanks, within 140 feet, and a statement by
the opposing residents' counsel that he was aware of two
instances of towers falling, the circumstances of which are not
in the record.  <u>See</u> Lewis Decl., ¶ 12.

Based on the Court's review of the evidence presented to the
Board on the safety issue, it does not appear that the Board
relied upon substantial evidence in concluding that the threat of
Plaintiff's tower collapsing and striking an above-ground fuel

tank presented a significant issue.  The record does not reflect
that any affidavits or reports were presented to the City that
address the instances of tower failures to which residents'
counsel referred, nor is there any evidence, other than that
introduced by Plaintiff, regarding the probability of and
circumstances of tower failure generally.  Thus, as Plaintiff
argued during the hearing, there was no evidence before the Board
to support the position that two instances of tower failures,
even if they in fact occurred, is statistically significant given
the number of towers deployed across the United States.

In contrast, Plaintiff's agent testified during the hearing
that the tower they proposed to construct was designed not to
fall even in extreme weather conditions and that, even in the
event of a catastrophic failure, the tower would collapse on
itself in sections, rather than topple over from its base in a
manner that would threaten nearby structures.  Id., ¶ 16.
Plaintiff supported this testimony with reports from three
different licensed professional engineers.  Kozyra Decl., Exs. K,
Q and R.

The possibility that Plaintiff's tower might fail at its
base causing it to strike a fuel storage tank, as potentially

dangerous as that might be, is only speculation on this record.
It is not substantial evidence of a safety hazard.  The Court
finds that the Board's safety hazard rationale for denying
Plaintiff's application is invalid.

2.   Adverse Visual Impact

The Board's second rationale for denying Plaintiff's
application was that Plaintiff's proposed facility would have an
adverse visual impact on the abutting residential community.
Residents opposed to Plaintiff's application testified throughout
the public hearing process that they were concerned about the
aesthetic harm that Plaintiff's facility would have on their
community.  The Board conducted a site walk and a tour of the
abutting residential community in an attempt to assess the visual
impact that the Plaintiff's facility would have on the
residential abutters.  Although Plaintiff asserts that only the
top of its tower would be visible, and even then only from a few
locations, the extent to which the Plaintiff's facility and tower
would be visible by abutting residential neighbors is a disputed
issue of fact.  See Board's Decision at 6, ¶ e; Kozyra Decl., ¶¶
16, 26.

Moreover, the most obvious reason for denying Plaintiff's

application on the grounds of adverse visual impact was
Plaintiff's failure to satisfy the camouflage provisions in the
Ordinance.  See e.g., Sprint Spectrum L.P. v. Bd. of Zoning
Appeals of Town of Brookhaven, 244 F. Supp. 2d 108 (E.D.N.Y.
2003) (finding that a ZBA's denial of a permit to construct a
tower was supported by substantial evidence where an applicant's
proposal did not comply with the applicable ordinance's setback
requirement of 150% of the tower's height).  In this case,
Section 305-29.1(E)(10) of the Ordinance provides that:

> All ground-mounted wireless service facilities shall be
> surrounded by a buffer of dense tree growth that
> extends continuously for a minimum distance of one
> hundred and fifty (150) feet from the mount, security
> barrier, or designated clear area for access to
> equipment, whichever is greatest, and screens views of
> the facility in all directions.  These trees must exist
> on the subject property, planted on site, or be within
> a landscape easement on an adjoining site.  The
> Planning Board shall have the authority to decrease,
> relocate, or alter the required buffer based on-site
> [sic] conditions.  The one hundred and fifty (150) foot
> vegetative buffer area shall be protected by a
> landscape easement or be within the area of the
> carrier's lease.

Kozyra Decl., Ex. A.  Plaintiff admits that its proposed facility
would not comply with the camouflage requirement because it would
not be "surrounded by a buffer of dense tree growth that extends
continuously for a minimum distance of one hundred and fifty

(150) feet," nor would the facility be screened in all directions.  <u>See</u> Pl.'s Mem. of Law in Support of Mot. for Summ. J. at 4.  Plaintiff did not obtain a variance from the camouflage requirement before filing its site plan application.  And while § 305.29.1(E)(10) of the Ordinance authorizes the Board to alter the requirements of the buffer based on site conditions, that does not mean that the Board is required to grant a waiver in any particular case.  Here, the Board found that granting a waiver was "not appropriate given the surrounding residential land uses."  <u>See</u> Board's Decision at 6, ¶ e.

Plaintiff contends that the Board should have waived the buffer requirement for its application since the Board waived the requirement for two previously approved towers that did not have any existing vegetative screening.  Kozyra Decl., ¶ 26.  Even accepting that assertion as true, the Court finds it insufficient to prove Plaintiff's substantial evidence claim.  On its face, the buffer zone requirements apply to all towers unless a variance or waiver is granted; none was granted here.[9]

Plaintiff further argues that the application of the

_____

[9]The issue of whether the Board impermissibly discriminated against Plaintiff, which is a claim presented in its complaint, is not presently before the Court for decision.

27

camouflage provisions to its proposed facility "makes no sense on the facts of this case, exceeds the bounds of site plan review and creates an impermissibly vague standard." Pl.'s Mem. of Law in Support of Mot. for Summ. J. at 22. None of these arguments persuade the Court that the Plaintiff is entitled to summary judgment on its substantial evidence claim.

First, as discussed above, the extent of the aesthetic harm to the abutting residents presented by Plaintiff's proposed facility is a disputed issue of fact. And even if the base of Plaintiff's facility would be screened, as Plaintiff asserts, the Board stated in its decision that the camouflage provisions in the Ordinance are not only directed at "what the neighbors see at a height of 6-8 feet, but the greater impacts of the height and bulk of the tower itself." Board's Decision at 6, ¶ e. Plaintiff questions the logic of the Board's reasoning, and the Court agrees that at a minimum the Board's interpretation of the camouflage provision is ambiguous. The Court disagrees with the Plaintiff's suggestion, however, that it has the authority to set aside the camouflage provisions on a substantial evidence review. The focus of substantial evidence review is whether the Board's decision is consistent with the applicable regulations and

ordinance provisions.  See Town of Lincoln, 107 F. Supp. 2d at
115 (the TCA's substantial evidence test is a procedural
safeguard that is centrally directed at whether the local
authority's decision is consistent with the applicable zoning
requirements).  Plaintiff has not demonstrated that no genuine
issue of material fact exists on the question of whether the
Board's Decision was consistent with the camouflage provisions of
the Ordinance.

Second, Plaintiff's contention that the Board exceeded the
bounds of site plan review is without merit.  Consideration of
whether "adequate buffers, landscaping and screening are provided
to protect adjoining properties" is expressly included in the
criteria for site plan review.  See Site Plan Review Regulations,
§ 402-7(B); see also Summa Humma Enters., LLC v. Town of Tilton,
849 A.2d 146, 149 (N.H. 2004) (finding that site plan review is
"designed to assure that sites will be developed in a safe and
attractive manner").  Moreover, the Site Plan Review Regulations
alert applicants to the need to comply with the provisions of the
City's ordinances.  Id., § 402-4.  Thus, the Court does not find
that the Board exceeded the bounds of site plan review.  See Town
of Amherst, 173 F.3d at 14 ("If the criteria or their

administration effectively preclude towers no matter what the carrier does, they may amount to a ban 'in effect' even though substantial evidence will almost certainly exist for the denial.").

Third, there is no evidence in the record that Plaintiff ever informed the City that it did not understand the requirements of the camouflage provisions, and Plaintiff does not identify which aspects of those provisions it contends are too vague in its memorandum.  Rather, Plaintiff acknowledged from the outset that it could not meet the camouflage requirements, and requested that the Board grant a waiver.  The Board refused.

In sum, the Court finds that Plaintiff has not demonstrated that no substantial evidence supports the Board's determination that Plaintiff's proposed facility would have an adverse visual impact that justified denying Plaintiff's application. Therefore, summary judgment on this aspect of Plaintiff's substantial evidence claim is not warranted.

        3.   <u>Ability to Accommodate Other Providers</u>

The Board found that the Plaintiff failed to meet the criteria required for site plan approval because Plaintiff did not submit adequate evidence to demonstrate that its proposed

facility "could accommodate future co-locators from the
perspective of the available space within the fenced-in
compound."  Board's Decision at 6, ¶ j.  While Plaintiff's
application was under review, Mr. Lewis asked Plaintiff to
prepare plans for a facility that would address three different
co-location possibilities identifying where the necessary pads
for generators and propane tanks would be located.  Plaintiff
refused this request arguing that it called for unnecessary and
speculative drafting exercises.  As support for Plaintiff's claim
that its revised plans sufficiently established that there was
enough room for three co-locators, Plaintiff asserted through its
representatives: (1) that the existing installations of three
different wireless service providers in the City do not even
include generators; and (2) that Plaintiff's proposed compound
would have more than twice the square footage of compounds for
two AT&T Wireless compounds that the Board previously approved.

     The Court agrees with Plaintiff that, without having the
exact specifications for other wireless providers' space
requirements, Plaintiff could not demonstrate with any degree of
certainty how the equipment of other wireless service providers
would be configured within Plaintiff's compound for purposes of

accommodation.  Therefore, the Court finds that it was unreasonable for the Board to require Plaintiff to lay out in detail hypothetical facilities in order to obtain approval for its site plan.  <u>See</u> <u>ATC Realty, LLC v. Town of Kingston, NH</u>, 303 F.3d 91, 94 (1st Cir. 2002) (substantial evidence means such evidence that a reasonable mind would accept as adequate to support a conclusion).

The Court further finds that the Board ignored highly relevant facts in reaching its conclusion that the Plaintiff had not demonstrated that its proposed facility could accommodate future co-locators.  The Board certainly had access to the site plans that the City approved for other wireless service providers within the City as the site plans are a matter of public record. Plaintiff's claim that its compound was larger than other compounds that the Board previously approved tends to show that Plaintiff's compound is sufficiently large to meet the City's co-location objectives.  To the extent that Plaintiff's assertion that its proposed compound was larger than those of other wireless service providers who were granted site plan approval by the Board was not true, the City had the burden to produce some evidence that showed that Plaintiff's assertion was false.  It

did not.  That supports a presumption that Plaintiff's assertion
was accurate.

Furthermore, the Board could have easily determined the
accuracy of Plaintiff's assertion that three existing
installations by wireless service providers in the City did not
use generators.  That fact also tended to show that the City's
concern about Plaintiff's ability to accommodate the generators
of co-locating wireless service providers was exaggerated.  And
even if Plaintiff's assertion about the use of generators by
other providers could not be considered determinative, the
evidence further shows that Plaintiff offered to re-configure its
compound and to work with other wireless service providers as
necessary for any co-locators that wanted to use a generator.
That offer included installing a single large generator instead
of multiple small generators.

Based on the facts in the record, the Court finds that the
City's conclusion that the Plaintiff did not adequately
demonstrate that its proposed facility could accommodate future
co-locators was not reasonably based on substantial evidence.
Therefore, the Court finds that the City's accommodation
rationale for denying the Plaintiff's site plan application is

33

invalid.

        4-5. <u>Feasibility of Alternative Sites and</u>
               <u>"Over-Utilization" of the Chosen Site</u>

The Court considers the Board's last two rationales for denying Plaintiff's application for site plan approval, the feasibility of alternative sites and over-utilization of the chosen site, together.  After reviewing the record before the Board, it does not appear to the Court that either of these rationales were sufficiently presented to the Plaintiff during the hearing process such that the Plaintiff could address them prior to the Board's denial of its application.  Therefore, denying Plaintiff's application on those two grounds was inappropriate.  <u>See</u> <u>Nat'l Tower</u>, 297 F.3d at 22 (finding that although some of a local authority has been preserved under the TCA and state law, in order to prevent unreasonable delay an applicant should be given a fair chance to respond to the board's reasons for denying its application, and an opportunity to satisfy the board, before having to file a lawsuit).

The Court further finds that the Lewis Declaration highlights the absence of substantial evidence in the record on the Planning Board's alternative sites and over-utilization rationales.  Mr. Lewis states in his Declaration that:

34

>   In review of US Cellular's Motion for Summary Judgment,
>   I notice reference to my April 19th Memorandum to the
>   Board concerning certain issues with the application.
>   Within that Memorandum, I address the possibility of
>   co-location on current existing facilities.  <u>I made no
>   comments on the feasibility of alternative sites, such
>   as the McDonald's site, nor did I present any
>   recommendations to the Board on such</u>.  <u>In addition, I
>   did not address any findings with respect to "over-
>   utilization"</u> rather, I recommended to the Board that
>   the traffic flow and parking area on the site did not
>   appear to be at issue.

Lewis Decl., ¶15 (emphasis added).  Notwithstanding Mr. Lewis's

admission that he presented no findings to the Board on the

issues of possible alternative sites and "over-utilization" of

the site in his April 19th Memorandum, the City does not identify

any other facts in the record that support a finding that the

Board's decision to deny the Plaintiff's application on those

grounds is supported by substantial evidence.

On the issue of alternative sites, the Board relied on a

statement that Mr. Kozyra made during a November 5, 2003 hearing

before the ZBA.  Board's Decision at 7, ¶ h.  The only apparent

fact of which the Board seems to have been aware was that Mr.

Kozyra told the ZBA that he had attempted to enter into a lease

agreement for Plaintiff with the owner of a nearby McDonald's

franchise, but that the parties could not reach an agreement on

financial terms.  Evidence of a failed lease negotiation standing

alone, however, is not substantial evidence that feasible
alternative sites for Plaintiff's proposed facility exists.  Even
setting aside the identified problem pertaining to reaching
acceptable financial terms, there is no evidence in the record
that the area available to be leased to Plaintiff for its
proposed facility would satisfy the Board's site review criteria.
To find that the McDonald's site presented a feasible alternative
based solely on the failed lease negotiation is pure speculation.

And with regard to the issue of "over-utilization," there is
no definition of that term either in the Ordinance or in the Site
Plan Review Regulations.  The Board was not free to make up new
criteria in order to deny an application.[10]  See VA Metronet,
Inc. v. Bd. of Supervisors of James City County, VA, 984 F. Supp.
966, 974 n.14 (E.D. Va. 1998) ("In order [to] be supported by
substantial evidence, the proffered reasons must comport with the
objective criteria in existence (i.e. zoning regulations, permit
application policies, etc.).  Governing bodies cannot simply

---

[10]By using the term "over-utilization," the Board may have
intended to invoke one of the general purposes of the Ordinance,
which is "to prevent overcrowding of real estate."  See
Ordinance, § 305-1(F).  Even if that were so, and it is not clear
on this record that it is, similar problems are presented with
reliance on alleged "overcrowding" on the chosen site since no
definition for that term is provided in the Ordinance.

arbitrarily invent new criteria in order to reject an
application.").  The Court further notes that New Hampshire law
prohibits a planning board from denying an application for site
plan approval based on a subjective determination that a proposed
use of land is inappropriate.  See Summa Humma Enters., 849 A.2d
at 78 (site plan review "does not give the planning board the
authority to deny a particular use simply because it does not
feel that the proposed use is an appropriate use of the land.
Whether the use is appropriate is a zoning question.") (quoting
Loughlin, 15 New Hampshire Practice: Land Use Planning and
Zoning, 2d Ed., § 30.09 at 437 (2000)).  Accordingly, the Court
finds that the over-utilization rationale used by the Board is
not based on an objective criterion in existence at the time that
Plaintiff's site plan application was under consideration, and is
therefore not supported by substantial evidence.

### Conclusion

     For the reasons set forth above, Plaintiff's motion for
summary judgment (document no. 15) is granted in part and denied
in part.  The Court finds that genuine issues of material fact
exist regarding whether substantial evidence supports the Board's
adverse visual impact rationale for denying Plaintiff's

application for site plan approval.  Therefore, summary judgment
in Plaintiff's favor on its substantial evidence claim is not
warranted with regard to that rationale.  The Court finds that
all of the Board's other grounds for denying Plaintiff's site
plan application are not supported by substantial evidence
contained in a written record and are therefore invalid.

    **SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: February 1, 2006

cc:  Steven E. Grill, Esq.
    Paul T. Fitzgerald, Esq.
    Geoffrey J. Ransom, Esq.