**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>USCOC of New Hampshire RSA #2,
Inc., a Delaware Corporation
d/b/a US Cellular</u>

      v.                          Civil No. 05-cv-266-JM

<u>City of Franklin,
New Hampshire</u>

<u>**O R D E R**</u>

This matter involves a dispute over plaintiff USCOC of New
Hampshire RSA # 2's ("US Cellular") desire to construct a
monopole wireless telecommunication facility in Franklin, New
Hampshire in order to close a significant gap in its provision of
wireless telecommunication service there.  It is before the court
on plaintiff's second motion for summary judgment (document no.
24).  Plaintiff contends defendant City of Franklin's
("Franklin") denial of its application to construct a facility
has effectively prohibited it from providing service in the area
and has unreasonably discriminated against plaintiff by
preventing it from building a tower similar to that of another
wireless telecommunication provider in Franklin.  Defendant
objects.  I find that genuine issues of material fact are in

dispute and cannot be resolved on the record before me.
Plaintiff's motion, therefore, is denied.

<u>Discussion</u>

US Cellular is entitled to judgment as a matter of law under
Fed. R. Civ. P. 56(c) if it can establish that no genuinely
disputed issues of material fact exist, considering the facts and
all reasonable inferences drawn therefrom in the light most
favorable to defendant.  <u>See</u> <u>Napier v. F/V Deesie, Inc.</u>, 454 F.3d
61, 66 (1st Cir. 2006) (citing authority for standard of review).
This action is brought under The Telecommunications Act of 1996
("TCA"), codified in several sections of the United States Code,
which provides for federal court jurisdiction over disputes
arising out of decisions by local authorities regarding the
installation or modification of wireless telecommunication
facilities.  47 U.S.C. § 332(c)(7)(B)(v).  The statute also
contemplates a speedy resolution of any such matter.  <u>Id.</u>  To
that end, this court has reviewed issues on summary judgment
already, in an effort to facilitate a more expeditious resolution
of the disputes which have prevented US Cellular from building
the tower at issue, as explained briefly below.[1]

_____

[1]For a more complete recitation of the procedural and
factual background of this case, <u>see</u> Order Granting in Part,

In a prior action brought by US Cellular involving the same proposed wireless communication facility, the court concluded that a height variance was justified and ordered the Zoning Board of Adjustment (the "ZBA") of Franklin to issue the necessary variance.  See USCOC of NH RSA #2, Inc. v. City of Franklin, Civ. No. 04-66-JM, slip op. at 25 (D.N.H. Jan. 12, 2005) ("Franklin I").  With that order, US Cellular sought approval of its site plan from the Franklin Planning Board ("the Board") in March 2005.  The Board denied US Cellular's site plan application, which led to the instant law suit.  Plaintiff moved for summary judgment on whether the Board's decision was supported by substantial evidence, as required by 47 U.S.C. § 332(c)(7)(B)(iii).  I granted in part plaintiff's motion for summary judgment and reversed the Board's decision on four of the stated bases for denying approval of the site plan, finding there was not substantial evidence to support those conclusions.  I also determined, however, that a question of fact existed regarding the adverse visual impact of the facility, precluding summary

---

Denying in Part, Mot. Summ. J., Feb. 1, 2006 (doc. no. 22) ("Sum. J. Order"), USCOC of NH RSA # 2, Inc. v. City of Franklin, Civ. No. 05-266-JM (D.N.H.) ("Franklin II").

judgment on that issue.  See Franklin II, Summ. J. Order at 37.[2]
Plaintiff then filed a second motion for summary judgment, which
is currently before the court.  Plaintiff now asserts that the
City's denial of its site plan application unreasonably
discriminates against it and effectively prohibits it from
providing wireless service to Franklin, in violation of 47 U.S.C.
§ 332(c)(7)(B)(i)(I) and (II), respectively.

Unlike the first summary judgment motion which required me
to review the administrative record for a determination of
whether the Board's decision was supported by substantial
evidence, review of the issues presented here is de novo.  See

---

[2]Specifically, the court found that the record demonstrated
there was not substantial evidence to support the Board's
conclusions that:  (1) the proposed tower posed a safety hazard;
(2) plaintiff had not demonstrated its proposed facility could
accommodate three other wireless service providers; (3)
alternative sites exist that could accomplish plaintiff's goals;
and (4) the chosen location constituted an over-use of the
property.  Significantly, the record demonstrated that the Board
had not given plaintiff an adequate opportunity to present
evidence pertaining to either the feasibility of alternative
sites or the charged over-utilization of the chosen site.  The
single issue for which a question of fact remained was whether
the Board's conclusion that the proposed monopole would have an
adverse visual impact on the surrounding residential neighborhood
was supported by substantial evidence.  There was a clear dispute
over the extent to which the facility would be visible from that
neighborhood, and some ambiguity in the Board's interpretation of
the scope of the camouflage requirement, which precluded summary
judgment.

Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 22 (1st Cir. 2002) (explaining how the anti-prohibition and anti-discrimination provisions "present questions that a federal district court determines in the first instance without any deference to the board").  Additional evidence may be proffered, therefore, to supplement the administrative record in order to resolve the dispute.  See id.  Under the circumstances presented here and as explained more particularly below, I find such additional evidence is necessary to determine whether the Board's denial of US Cellular's site plan is preempted by the federal requirements that local land use authorities not discriminate in allowing, or effectively prohibit, the provision of wireless communication service.  See Nextel Commc'ns v. Town of Wayland, 231 F. Supp. 2d 396, 408 (D. Mass. 2002) (explaining how TCA claims reviewed de novo are treated like all other federal claims on summary judgment).

1.  Discrimination Claim

The TCA limits the authority of local governments to decide where wireless communication facilities can be constructed if the decision "unreasonably discriminate[s] among providers of functionally equivalent services".  47 U.S.C. § 332(c)(7)(B)(i)

(I); see also Sw. Bell Mobile Sys. v. Todd, 244 F.3d 51, 57–58
(1st Cir. 2001) (discussing preemptive role of TCA).  This
limitation permits some discrimination, based on traditional
zoning goals, as long as the distinctions drawn between providers
are reasonable to protect legitimate zoning prerogatives.  See
MetroPCS, Inc. v. City of San Francisco, 400 F.3d 715, 727 (9th
Cir. 2005) (listing cases and citing legislative history which
interpret the scope of discrimination allowed).  To state a claim
for unreasonable discrimination, providers must demonstrate:
"that they have been treated differently from other providers
whose facilities are 'similarly situated' in terms of the
'structure, placement or cumulative impact' as the facilities in
question."  Id. (explaining "almost all federal courts
considering such cases" have so ruled (emphasis added in quote
and internal citation omitted)).

     In support of its claim, US Cellular contends defendant
unreasonably discriminated against it when its site plan approval
was denied because US Cellular's proposed tower did not meet the
zoning ordinance's 150 foot vegetative buffer requirement.  See
Pl.'s Summ. J. Mem. at 24; see also Kozyra Aff. ¶ 18 (citing §

305-29.1(E)(11)(sic)[3]).  In particular, US Cellular argues that
the Board waived the vegetative buffer requirement for two towers
constructed by AT&T and, therefore, should have treated US
Cellular similarly by waiving the requirement for it.  For
plaintiff to prevail, it must demonstrate there is no genuine
issue of material fact regarding whether its proposed facility is
"similarly situated" to the AT&T towers in terms of "structure,
placement and cumulative impact."  MetroPCS, Inc., 400 F.3d at
727.  When deciding whether or not to approve the three site
plans at issue here[4], the Board could have considered, and in
fact did consider, the visual, aesthetic and safety impact of the
particular facility in the proposed location, without that
comparison constituting unreasonable discrimination.  See Sprint
Spectrum, L.P. v. Willoth, 176 F.3d 630, 638-39 (2d Cir. 1999)
(finding no discrimination where the disparate treatment was

_____

[3]The correct subsection appears to be 10, not 11, which
provides:  "[a]ll ground-mounted wireless service facilities
shall be surrounded by a buffer of dense tree growth that extends
continuously for a minimum distance of one hundred and fifty
(150) feet from the mount, security barrier, or designated clear
area for access to equipment, whichever is greatest, and screens
views of the facility in all directions."  § 305-29.1(E)(10) of
the Franklin Zoning Ordinance.

[4]Those three site plans are the two AT&T tower plans and the
US Cellular proposed plan.

reasonable).

The undisputed facts relevant to the discrimination claim establish the following:  US Cellular proposes to construct a 150-foot monopole tower on the rear portion of the CN Brown property, located at 798 Central Street (the "Central Street property"), on U.S. Route 3 in Franklin's business district, where wireless telecommunications towers are a permitted use. The Central Street property abuts a residential zone.  AT&T has a similar 150-foot monopole tower located on Industrial Drive in an area of Franklin designated an industrial zone (the "Industrial Drive tower").  AT&T has a second cell tower, which is designed as a flag pole, is 110 feet high, and is located behind a church on South Main Street in downtown Franklin (the "South Main Street tower").  Both AT&T towers are permitted uses in their respective locations, and AT&T was granted waivers from the required vegetative buffer zone for both locations.

Plaintiff argues its proposed facility is "identical in structure and function" to AT&T's Industrial Park tower.  See Pl.'s Summ. J. Mem. at 10, 24 (document no. 24-2).  Plaintiff also argues its site is on a bigger lot than either AT&T tower, is set back 100 feet from the property line, is surrounded by

dense vegetation on three sides, and is shielded from the street
on the fourth side by an existing gas station and proposed
additional pine trees.  By comparison, the Industrial Park tower
is only 41 feet from the property line, with a minimal
vegetative buffer; similarly, the South Main Street tower is only
55 feet from the nearest property line and has no landscaping at
its base.  See id.  Both the Industrial Drive tower and the South
Main Street tower are visible from the street and neighboring
residential properties.  Id.  Plaintiff asserts that its proposed
facility would have no greater impact on Franklin than the AT&T
towers do.

Defendant counters that AT&T's towers are distinguishable
from plaintiff's proposed tower.  As an initial matter, both AT&T
site plan applications were unopposed and received no public
criticism when they were presented to the Board for approval.
See Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Opp.
Mem.") (document no. 26) at 15.  Defendant argues that no
opposition was received because the aesthetic impact of both AT&T
towers was minimal.  Defendant further argues that requiring a
vegetative buffer would have drawn attention to the AT&T towers,
which would have undermined the intended purpose of the buffer

requirement.  Finally, defendant contends that both the
Industrial Drive tower and the South Main Street tower blend into
their respective settings, which explains the lack of public
opposition and the waiver of the vegetative buffer requirement.

     After carefully reviewing the submissions on file, I find a
material question of fact remains pertaining to the proximity of
the AT&T towers to residential neighborhoods compared to the
Central Street property.  The critical issue in this dispute is
to what extent the proposed facility will impact the adjacent
neighborhood.  Although plaintiff asserts the Industrial Drive
and South Main Street towers are visible from residential
neighborhoods, the record is unclear as to whether a residential
zone abuts either of those sites like it does the Central Street
property site.  The record is also ambiguous as to how much of
the Central Street property is visible from the adjacent
neighborhood, and what precisely is intended to be shielded by
the vegetative buffer requirement.  Because "the record contains
no systematic comparison of the sites in question," MetroPCS,
Inc., 400 F.3d at 729, and because the TCA allows localities the
flexibility "to treat facilities that create different visual
[or] aesthetic concerns differently . . . even if those

10

facilities provide functionally equivalent services," id. at 727, I conclude that summary judgment is not appropriate on the current record.  Further evidence must be submitted to establish the visual and aesthetic impact on the adjacent residential neighborhoods of US Cellular's proposed tower compared to the Industrial Park and South Main Street towers, before I can determine whether denying US Cellular's site plan application because it failed to comply with the vegetative buffer requirement constituted "unreasonable discrimination" in violation of 47 U.S.C. § 332(c)(v)(B)(i)(I).

   2.  Effective Prohibition Claim

   As a second limitation on local control over the siting of wireless communication facilities, the TCA preempts local zoning regulations which either prohibit or effectively prohibit the provision of wireless communication service.  See 47 U.S.C. § 332(c)(7)(B)(i)(II).  This mandate reflects a compromise in the TCA between preserving local zoning authority and creating a seamless national wireless communication system.  See Town of Amherst v. Omnipoint Commc'ns, 173 F.3d 9, 13 (1st Cir. 1999) (explaining the competing goals of the TCA).[5]  The effective

_____

     [5]The anti-prohibition provision presumes that, in a disputed case, a gap in wireless service exists that local regulations are

prohibition provision preempts local zoning decisions which
preclude wireless service, even if those decisions correctly
applied the pertinent zoning regulations and are supported by
substantial evidence.  See Second Generation, 313 F.3d at 628-29
(reviewing denial of variance supported by substantial evidence
to determine whether it constituted an unlawful effective
prohibition); see also Town of Amherst, 173 F.3d at 14 (finding
effective prohibition if regulations set forth criteria
impossible to satisfy as written or administered).

       The anti-prohibition clause extends beyond total bans on
cell towers to reach individual denials that "effectively
prohibit" wireless service if the provider can show either (1)
that "the town sets or administers criteria which are impossible
for any applicant to meet," or (2) that its application is the
only feasible plan to fill the gap in service.  Second
Generation, 313 F.3d at 630.  The burden of proof falls on the
provider and demands a showing "from language or circumstances

preventing providers from filling.  See Second Generation Props.
v. Town of Pelham, 313 F.3d 620, 631-35 (1st Cir. 2002)
(rejecting the "any service equals no effective prohibition" rule
to focus on the consumer's need for service by its particular
provider); see also Nat'l Tower, 297 F.3d at 20 (holding that
decisions which prevent the closing of a significant gap in
service violate § 332(c)(7)(B)(i)(II)).

not just that *this* application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." <u>Town of Amherst</u>, 173 F.3d at 14 (emphasis in original). Here, there is no dispute that US Cellular has a significant gap in its coverage. There is also no dispute that Franklin does not have a blanket prohibition against cell towers. The issue is whether the denial of US Cellular's site plan constituted an effective ban on its service to the presently uncovered area.

US Cellular argues that further applications before the Board would be fruitless both because its site plan is the only feasible option and because defendant's regulatory requirements set forth criteria which are impossible to meet. I address each argument in turn.

### (a) The only feasible site plan.

US Cellular makes several arguments in support of its contention that the Central Street Property is the only feasible site to cover its existing gap in service. In support of this argument, plaintiff first contends this court has already concluded that no alternative sites exist. <u>See</u> Pl.'s Summ. J. Mem. at 16. Plaintiff misunderstands the court's prior rulings.

Previously the court concluded the Board had not given plaintiff
an *adequate opportunity* to show that no alternative sites were
feasible, including co-location on other sites, and, therefore,
could not base its denial of plaintiff's site plan application on
that purported failure.  <u>See</u> Summ. J. Order at 3-4, 34-36.
Although the court decided the administrative record did not
include substantial evidence to support the Board's decision, the
court formulated no opinion regarding the actual feasibility of
the selected site compared to other possible sites.  As those
previous decisions illustrate, there is a dearth of evidence in
the record comparing the Central Street property to alternative
sites, including co-location on existing towers.  Because the
feasibility of alternative sites is critical to a determination
of whether US Cellular has been effectively prohibited from
providing service in Franklin, this raises a genuine issue of
material fact.

     Plaintiff next argues the Central Street property is the
only feasible site because zoning regulations, in particular the
vegetative buffer requirement and the height limitation, cannot
be satisfied in any other location.  Specifically, plaintiff
contends that the business district along Route 3, where its

14

proposed tower would be a permitted use, is no more than 300 feet wide, which severely limits where its facility can be placed and still satisfy the 150 foot vegetative buffer requirement. Plaintiff also asserts that the height limit of 150 feet further restricts the available options.  Defendant rejects plaintiff's assertion and offers three alternative sites in support of its position:  the McDonald's property, see Def.'s Opp. Mem. at 8-9, Exhibits 8 and 9, the R.D. Edmunds property, see id., and the Franklin Shopping Plaza, see id. at 9, Exhibits 9 and 13. Defendant argues that the visual and aesthetic impact of the tower in one of these other locations may cause the Board to treat more favorably an application for site plan approval on one of the alternate sites.  Plaintiff counters by citing the shortcomings of these properties, which plaintiff alleges would prevent it from locating a facility on any one of them that would be adequate to fill the coverage gap yet still conform with the various zoning requirements of Franklin's regulatory scheme.

   This discourse illustrates a clear dispute of material fact between the parties pertaining to the viability of alternative sites.  Plaintiff correctly argues that it is not required to exhaust every possible alternative, especially where hostility

can be inferred from the Board's treatment of its application.
See Nextel Commc'ns v. Town of Provincetown, slip op. No. 02-
11646-DPW, WL 21497159, *10-11 (finding regulations which made
alternative sites technically unfeasible effectively prohibiting
wireless service); see also Town of Wayland, 231 F. Supp. 2d at
408-09 (lengthy record of repeated delays and denials showed
town's effective prohibition).  Yet, while the record
demonstrates that US Cellular has had difficulty getting approval
to construct its 150-foot monopole on the Central Street
property, the denial of one site plan application does not create
a pattern of hostility towards US Cellular.  Cf. id. (finding
hostility after 8 years of effort to comply with changing zoning
requirements prevented provider from getting the approval needed
to construct its facility).  The record contains no evidence
systematically comparing the various properties, or demonstrating
unsuccessful efforts by US Cellular to use one of the alternate
sites, which now might substantiate plaintiff's claim that the
Central Street property is the only feasible site.[6]  See Second

---

[6]In fact, the town maps and photographs of the various
properties offered as exhibits indicate one of the other sites
might enable the proposed facility to have less of a visual and
aesthetic impact, which might persuade the Board to grant any
waivers or variances such an alternative location might require.

Generation, 313 F.3d at 635 (denying effective prohibition claim where provider failed to show efforts to build a taller tower or to build at an alternative site had also been denied); see also Town of Amherst, 173 F.3d at 15 (denying effective prohibition claim where provider declined to present serious alternatives to the town); see also Sw. Bell Mobil Systems, 244 F.3d at 63 (requiring provider to "develop a record demonstrating that it made a full effort to evaluate the other available alternatives and that the alternatives are not feasible to serve its customers").  Based on the facts presently before the court, I cannot find as a matter of law that plaintiff's efforts to pursue another site plan application for an alternative site would necessarily be futile.

### (b) Impossibility of Zoning Criteria

Finally, plaintiff argues the zoning regulatory scheme sets forth criteria which are impossible to meet, rendering further applications fruitless.  Defendant counters that plaintiff's ability to satisfy all but one of the criteria demonstrates they can be met.  Plaintiff replies that the newly amended fall zone requirement of 110% of the tower's height creates an absolute bar to construction on any of the alternative sites located along

17

Route 3, where a tower would need to be located in order to fill
its coverage gap.  Plaintiff presents a strong argument, because
the 300-foot wide business district along Route 3, where the
proposed tower would be built, cannot accommodate a 110% fall
zone for a 150-foot tower.  Again, however, nothing in the record
demonstrates whether the Board will strictly enforce that new
fall zone requirement or be willing to exempt facilities in
particular locations under special circumstances.  Defendant may
very well recognize plaintiff's right to fill its gap in coverage
and allow plaintiff to construct a tower on one of the sites
which the Board determines has a more palatable visual and
aesthetic impact.  <u>See</u> <u>Second Generation</u>, 313 F.3d at 630
(recognizing how local authorities are aware of the preemptive
power of the TCA and wisely consider it when making their
decisions).  Accordingly, I cannot definitively say Franklin's
regulatory criteria are impossible to meet.

Summary judgment on plaintiff's effective prohibition claim,
therefore, cannot be granted.

<u>Conclusion</u>

For the reasons set forth above, plaintiff's motion for
summary judgment (document no. 24) is denied.  The parties shall

have the opportunity to proffer evidence to resolve the questions
of fact identified here and provide the court with the necessary
information to resolve this dispute.  The clerk is directed to
schedule an evidentiary hearing on a mutually agreeable date
within the next 60 days.

    **SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge


Date:  February 6, 2007

cc:    Paul T. Fitzgerald, Esq.
       Steven E. Grill, Esq.
       Geoffrey J. Ransom, Esq.